Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 CR 695 | DATE | November 2, 2004 |
| CASE TITLE | *United States v. Jose Roberto Moran* | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, this Court DENIES Defendant Jose Moran's Motion For New Trial Or For Judgment of Acquittal [71-1]. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 03 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT | docketing deputy initials | 73 |
| | Mail AO 450 form. | 2004 NOV -3 AM 8:00 | | |
| | Copy to judge/magistrate judge. | FILED | date mailed notice | |
| RTS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| UNITED STATES of AMERICA ) | |
| ) | Hon. Blanche M. Manning |
| v. ) | |
| ) | 02 CR 695-1 |
| JOSE ROBERTO MORAN ) | |

## MEMORANDUM AND ORDER

A jury found Defendant Jose Roberto Moran guilty on one count of possession with intent to distribute cocaine, in violation of 18 U.S.C. § 841(a)(1). This matter comes before the Court on Defendant Jose Moran's Motion For New Trial Or For Judgment of Acquittal [71-1]. For the reasons set forth below, the Court DENIES this motion.

### BACKGROUND[1]

Moran is an independent long-haul truck driver, who up until the time of his arrest owned and operated his own truck. On July 15, 2002, the police arrested Moran at a truck stop just outside of Chicago after finding 48 kilograms of cocaine in two suitcases inside the trailer attached to his truck. Officer Michaels, the arresting officer, testified that he initially approached Moran's truck at a truck stop for a "consensual encounter." The officer stated that Moran's truck caught his attention because it had "indicators" which the police look for in spotting trucks carrying contraband. These indicators included the fact that Moran's truck had a high Department of Transportation Number, was owner operated, based in Los Angeles (which is a source city for drugs), had a larger than usual padlock on the trailer, and was carrying two passengers.

---

[1] The facts in this opinion are derived from the parties' submissions and the relevant trial testimony and exhibits.

After questioning Moran about his passengers, load, destination, and why he was in Chicago, Officer Michaels asked Moran if he could search his truck. Moran consented to the search. After Moran opened the padlock, Officer Michaels climbed into the trailer. He immediately noticed that all the pallets of produce looked in tact and were lying flat on the bed of the trailer, except for a single pallet, which was leaning against the wall of the trailer. Upon looking closer at this pallet, Officer Michaels saw what appeared to be a suitcase under the pallet. After closer inspection, Officer Michaels found two suitcases, which contained numerous bundles of what appeared to be cocaine. Officer Michaels then arrested Moran and read him his Miranda rights. An analysis revealed that the suitcases contained 48 kilograms of cocaine.

After a trial, in which Moran took the stand, a jury found him guilty of possession with intent to distribute cocaine.

## ANALYSIS

Moran now moves this Court for a judgment of acquittal, or in the alternative for a new trial, pursuant to Federal Rules of Criminal Procedure 29 and 33. In support of his motion, Moran has listed a laundry list of reasons, many of which lack any authority or specific citations to the record, and therefore, need not be addressed. See, e.g., United States v. Lanzotti, 205 F.3d 951, 957 (7th Cir. 2000). Nevertheless, this Court will address each of his contentions, which can be grouped into four categories: (1) sufficiency of evidence; (2) erroneous evidentiary rulings; (3) improper jury instructions; and (4) objections during closing arguments. Before discussing these contentions, however, the Court will first review the standards of review for Rules 29 and 33.

I.  **Standards of Review for a Rule 29 Judgment of Acquittal and a Rule 33 Motion for a New Trial**

Federal Rule of Criminal Procedure 29 governs Moran's insufficiency of evidence argument. Under Rule 29, a court may acquit a defendant on "one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing a motion for judgment of acquittal pursuant to Rule 29, the Seventh Circuit mandates that the district court determine:

> whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government . . . bearing in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.

United States v. Reed, 875 F.2d 107, 111 (7th Cir. 1989). In short, the court views all the evidence in the government's favor and is absolutely barred from second-guessing the jury's credibility determinations or findings of fact. Id. Instead, the court merely assesses the record to determine if all the admissible evidence supports the defendants' adjudication of guilt beyond a reasonable doubt. Id.

Rule 33 permits the Court to order a new trial "in the interests of justice." Unlike a motion for acquittal under Rule 29, in ruling on a motion for a new trial under Rule 33, the court is not required to view the evidence in a light most favorable to the government. United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999); 58 Am. Jur. 2d New Trial §391(2001). Despite the more lenient standard, however, Rule 33 motions are nevertheless disfavored and courts generally should only grant in "the most extreme cases." United States v. Linwood, 142 F.3d

3

418, 422 (7th Cir. 1998). See also United States v. Kamel, 965 F.2d 484, 490 n.7 (7th Cir. 1992). The trial court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." Reed, 875 F.2d at 113. The court may only order a new trial if "the verdict is against the manifest weight of the evidence" and a guilty verdict would result in a "miscarriage of justice." Washington, 184 F.3d at 657.

## II. Sufficiency of Evidence

Moran was found guilty on one count of possession with intent to distribute cocaine in violation of 18 U.S.C. § 841(a)(1). To prove possession with intent to distribute under section 841, the Government was required prove beyond a reasonable doubt that Moran: (1) knowingly or intentionally possessed cocaine; (2) with intent to distribute it; and (3) knew cocaine was a controlled substance. United States v. Durades, 929 F.2d 1160, 1168 (7th Cir. 1991). Moran contends that the Government failed to prove beyond a reasonable doubt that he knew there was cocaine in his truck.

Contrary to Moran's assertions, it was permissible for the Government to use circumstantial evidence to prove that Moran had knowledge of the cocaine. Indeed, the Seventh Circuit holds that "[i]n narcotics cases, knowledge must often be proved by circumstantial evidence." United States v. Hernandez, 13 F.3d 248, 252 (7th Cir. 1994). See also United States v. Valencia, 907 F.2d 671, 678 (7th Cir. 1990).

After viewing the trial and carefully observing the testimony and the demeanor of the witnesses, this Court finds that the Government presented sufficient circumstantial evidence for the jury to reasonably find beyond a reasonable doubt that Moran knew that there was cocaine in his truck. For example, how and why Moran found his way to a truck stop outside of Chicago

4

leads to a reasonable inference that Moran had knowledge of the drugs. The produce in Moran's truck came from three different locations in California, which Moran picked up on July 12 and 13 of 2002. The "trucking broker," who gave Moran his pick-up instructions, testified that Moran called him on July 11 and stated that he was in Los Angels and ready to work. Based on this information, the broker prepared a "load sheet," which called for Moran to pick up three loads of produce, the first pick-up being in Los Angeles with the other two in the "Central Valley" of California. After picking up the last load in Central Valley, Moran was to proceed cross country to deliver the produce to Maryland.

Moran, however, did not follow the "load sheet." According to the broker, the "load sheet" provided the fastest delivery time, which would thereby earn Moran more money on his delivery. Instead, on July 12, Moran drove his empty truck from Los Angels to the Central Valley, where he picked up two loads before heading back to Los Angeles to spend the night. Moran then picked up his third and final load of produce in Los Angeles around 11:00 a.m. on July 13. Based on the reading from a weigh station near Los Angeles, however, Moran did not leave the Los Angels area until after 3:30 p.m. that afternoon.[2]

Likewise suspicious was the wayward route Moran took after leaving Los Angeles. Assuming that his primary goal was to deliver the load of produce to Maryland as fast as possible and thereby earn the maximum profit for the trip, Moran had no business coming to Chicago, which is well off course from the most direct route from Los Angeles to Maryland. Moran made

---

[2] In an attempt to explain his wayward route, Moran testified that he went to Central Valley first because the Los Angeles load was not ready until July 13th. The manager from the Los Angeles pick-up, however, stated that the load was ready to be picked up on July 11th.

5

a number of contradictory statements as to why he was in Chicago. According to Officer Michaels, Moran initially told him that his dispatcher had rerouted him to Chicago. When, however, the officer asked Moran for the phone number of the dispatcher to confirm this, Moran then stated that he was in Chicago to drop off one of his passengers. At trial, however, Moran told the jury that he was initially going to drop his passenger off in Detroit, and that the real reason he stopped in Chicago was to shower and eat at a truck stop.

The crux of Moran's defense was his testimony that the suitcases belonged to one of his passengers. The jury, however, was free to disbelieve this testimony as Moran was caught in a number of lies and confronted with contradictory statements. For example, at the time of his arrest, Moran told the police that he was present when the trailer was loaded, and therefore, he knew of everything on board and nothing could have been put on without his knowledge. He also was in possession of the only three keys to the padlock on the trailer. Additionally, Moran testified that he initially drove from Los Angeles to the Central Valley because the load in Los Angeles was not ready. The Government, however, offered evidence, including a stipulation from the manager of the Los Angeles warehouse manager and a work order, showing that this was untrue. The Los Angeles load was ready for pick-up before Moran left Los Angeles for the Central Valley.

Moran likewise told contradictory versions of where he intended to take his two passengers. On direct, Moran testified that he was going to take one of the men to Detroit on his way to Maryland. When confronted with his log-book with three separate entries showing his destination as Chicago not Detroit, Moran testified that the entries were a mistake. On redirect, however, Moran told yet another story – that he was in fact going to drop-off one of his

passengers in Chicago.

Consequently, based on these changing stories and contradictions, the jury, which is the ultimate judge of credibility, was free to disbelieve Moran's story regarding his passenger and the suitcases. This Court thus holds that there was sufficient circumstantial evidence for the jury to reasonably find that Moran knew that he was carrying narcotics in his truck.

### III.     Alleged Evidentiary Errors

Moran contends that this Court erred in: (A) admitting evidence that Moran violated trucking rules and regulations by falsifying his log book; (B) denying Moran's motion in limine regarding the "indicators" which led Officer Michaels to approach Moran's truck; (C) refusing to grant a mistrial after the Government asked Moran to comment on the testimony of one of the Government's witnesses; and (D) denying his motion to strike a portion of Moran's cross-examination, where the Government impeached him with his post-arrest statements. The Court will address each of these contentions in turn.

#### A.     Evidence of Violations of Trucking Rules and Regulations

Without pointing to a particular witness or testimony, Moran contends that this Court erred in allowing evidence that he violated trucking rules by making false statements in his log book. According to Moran, this evidence violated Federal Rule of Evidence 404(b) because it "amounted to propensity-type evidence."[3]

Federal Rule of Evidence 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he likely acted in

---

[3] The Court notes that while Moran filed a motion in limine to the admission of expert testimony on this issue, which this Court denied, during trial he did not object to the alleged "propensity-type evidence."

7

conformity therewith on a particular occasion. Fed. R. Evid. 404(b). The rationale for the exclusion of this evidence is that it is of slight probative value and tends to distract the trier of fact from the facts at issue. United States v. Smith, 103 F.3d 600, 602 (7th Cir. 1996).

Under the "inextricably interwound doctrine," evidence "concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence . . . within the meaning of [] 404(b)." United States v. Senffner, 280 F.3d 755, 764 (7th Cir. 2002). Therefore, acts are admissible if "they complete the story of the crime [or] their absence would create a . . . conceptual void in the story . . . or are so blended or connected that they . . . explain the circumstances surrounding . . . the charged crime." Id.

Here, evidence that Moran falsified his log book did not present a risk that the jury would infer he was the type of person who would be likely to possess 48 kilograms of cocaine. Moreover, evidence of the false log book entries were very closely related to the circumstances surrounding how Moran was arrested near Chicago with 48 kilograms of cocaine, when he was scheduled to deliver produce from California to Maryland. By presenting evidence regarding the falsification of his log book, the Government was able to show that Moran hoped to be able to provide a legitimate reason for being in Chicago. Indeed, Moran showed the log book to the police to support his story that he had his load rerouted to Chicago. Accordingly, this Court finds that admission of the false log book entries was appropriate under "the inextricably interwined doctrine" and did not violate Rule 404(b).

### B. "Indicators" which Led to the Stop

Moran further contends that this Court erred in permitting Officer Michaels to testify regarding the "indicators" which led him to approach Moran. These indicators include the fact that Moran's truck had a high Department of Transportation Number, was owner operated, based in Los Angeles (a source city for drug shipments), had a larger than usual padlock on the trailer, and was carrying two passengers. According to Moran, this testimony was an impermissible lay opinion under Federal Rule of Evidence 701. This testimony, however, was not offered as an opinion. Instead, the Government offered it to rebut a question on cross examination by Moran's counsel – whether Officer Michaels approached Moran because he was of Latino descent. Accordingly, the Court finds that this question was proper.

### C. Questioning of Moran on the Testimony of the Government's Witnesses

Moran further contends that his "right to a fair trial was prejudiced" when the Government "asked [him] to comment on [its] witness[es'] testimony." In support of this position, Moran cites to United States v. Freitag, 230 F.3d 1019, 1024 (7th Cir. 2000), which held that "it is impermissible to ask one witness to comment on the veracity of the testimony of another witness." Although the Seventh Circuit found in that case that the prosecution improperly asked the defendant to comment on the "truthfulness" of other witnesses' statements, it affirmed the conviction because the error was harmless given that the "challenged questions constituted only a small portion of the entire cross-examination . . . [and] the evidence against [the defendant] was overwhelming." Id.

Here, the parties contest whether the Government actually asked Moran to comment on the truthfulness of other witnesses' testimony. Assuming that the Government did overstep its

9

bounds, the Court nevertheless finds that this error was harmless for several reasons. First, the Court sustained Moran's objection and struck the improper questions and answers and instructed the jury to disregard the testimony. "Absent unusual circumstances," it is assumed juries follow courts curative instructions to disregard testimony. United States v. Bonner, 302 F.3d 776, 782 (7th Cir. 1999). Also, as in Freitag, the improper questions here constituted only a small part of Moran's cross-examination. Consequently, the Court finds that any error under Freitag was harmless.

### D. Impeachment with Post-Arrest Statements

Moran additionally contends that this Court erred in denying his motion to strike portions of his cross-examination where the Government asked him why he did not tell the arresting officers that one of his passengers had put the subject suitcases in his truck. According to Moran, this line of questioning "effectively amounted to comment of the defendant's silence in violation of Doyle v. Ohio, 426 U.S. 610 (1976)." In Doyle, the Supreme Court held that allowing a defendant to be impeached by post-Miranda silence is contrary to due process. Id. at 618-20. Where, however, a defendant makes a post-arrest statement, not exercising his right to remain silent, the prosecution may impeach him if he gives an inconsistent statement at trial. See 47 F.3d 904, 906-07 (7th Cir. 1995) (holding that Doyle not applicable "when a defendant speaks to government agents after having received Miranda warnings," and therefore, a prosecutor may impeach the defendant by pointing out inconsistencies "between the story he told to the police and the story he tells the jury").

Here, after being arrested and given his Miranda warnings, Moran told the police that he was present when the trailer was loaded, and therefore, he knew of everything placed in the

10

vehicle and nothing could have been put on without his knowledge. At trial, however, Moran testified that he saw one of his passengers put the suitcases into the trailer. Thus, because Moran made post-arrest statements after receiving Miranda warnings, the Government was entitled to attempt to impeach his statement at trial with his post-arrest statements.

IV. **Jury Instructions**

Additionally, Moran contends that this Court erred in giving the Government's Instructions 21, 23, and 24, over his objection. With regard to Instruction 21, Moran admits that it was taken from the Seventh Circuit Pattern Instructions.[4] He contends, however, without citing to any authority, that it was improper because "it did not correspond to the facts in this case" because he "did not contest that there were drugs in the trailer, but [rather] that he did not know that they were there." Contrary to Moran's assertion, the Government did not need to show that he had actual knowledge that he was carrying cocaine because knowledge of the actual illegal drug is not an element of section 841. United States v. Barlow, 310 F.3d 1007, 1012 (7th Cir. 2002) ("Section 841(a) requires only that the defendant know that he possesses a controlled substance; it does not require that he know the type of controlled substance he possesses").

Moran also contends that the Court erred in giving Instructions 23 and 24 on aiding and abetting because it was not charged in the indictment and the Government did not present evidence that there was more than one person involved in the offense. Aiding and abetting, however, "is not a separate offense, it need not be charged separately in the indictment." United States v. Moya-Gomez, 860 F.2d 706, 756 (7th Cir. 1988). Based on this premise, a number of

---

[4] Instruction 21 stated: "[i]t does not matter whether the defendant knew the substance was cocaine. It is sufficient that the defendant knew that it was some kind of prohibited drug."

11

circuits have held that where another individual is alleged to have participated in the crime, it is not improper for a court to give an aiding and abetting instruction even though it was not charged in the indictment. United States v. Scroger, 98 F.3d 1256, 1262 (10th Cir. 1997); United States v. Sanchez, 917 F.2d 607, 611 (1st Cir. 1990). Here, while the Government did not charge aiding and abetting in the indictment, Moran testified that one of his passengers placed the suitcases in his truck. Thus, it was not erroneous to give the aiding and abetting instruction.

Accordingly, this Court finds that Instructions 21, 23, and 24 were properly given.

## V. Objections During Summation

Moran's final contention is that the Court erred by: (1) overruling his objection to the Government's argument that Moran asked the Spanish interpreter "for a translation of the word 'suitcase,'" when he "actually asked for a translation of 'shoulder bag'"; and (2) sustaining the Government's "objection to the reasonable doubt portion of Moran's closing argument." Both of these contentions are without merit. The jury heard the testimony and could remember exactly what transpired between Moran and the Spanish translator. Moreover, even if the Government did make an incorrect statement, it was such a minor matter that the Court fails to see how it could have prejudiced Moran in any fashion. As for the second assertion, the Court, not the litigants, instruct the jury on the law. Therefore, it was not improper for this Court to sustain the Government's objection when Moran's counsel attempted to define reasonable doubt during his closing argument. Moreover, even if the Court did err, it finds Moran's right to a fair trial was not unduly prejudiced and that this is not an "exceptional case" where "the verdict is against the manifest weight of the evidence" and the guilty verdict would result in a "miscarriage of justice." Washington, 184 F.3d at 657. Accordingly, this Court finds that it did not err in the rulings it made during summation.

## CONCLUSION

For the foregoing reasons, this Court DENIES Defendant Jose Moran's Motion For New Trial Or For Judgment of Acquittal [71-1]. It is so ordered.

ENTER:  *[signature: Blanche M. Manning]*
BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: 11-2-04