UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA ) | |
| ) | Hon. Blanche M. Manning |
| v. ) | |
| ) | 02 CR 695-1 |
| JOSE ROBERTO MORAN ) | |

## MEMORANDUM AND ORDER

A jury found Defendant Jose Roberto Moran guilty on one count of possession with intent to distribute cocaine, in violation of 18 U.S.C. § 841(a)(1). This matter now comes before the Court for sentencing and on Moran's objections to the Presentence Investigation Report ("PSR") prepared by the United States Probation Office ("Probation"). For the reasons set forth herein, this Court sustains Moran's objections in part and overrules them in part and imposes a sentence of 120 months.

## BACKGROUND[1]

### Evidence Presented at Trial

On July 15, 2002, the police arrested Moran at a truck stop just outside of Chicago after finding 48.26 kilograms of cocaine in two suitcases inside the trailer attached to his truck. At that time, Moran was working as an independent long-haul truck driver and owned and operated his own eighteen wheel, long-haul truck.

The arresting officer testified that he initially approached Moran at a truck stop for a "consensual encounter." Moran's truck caught the officer's attention because it had "indicators" which the police look for in spotting trucks carrying contraband. These indicators included the

---

[1] The facts in this opinion are derived from the relevant trial testimony and exhibits and the PSR.

fact that Moran's truck had a high Department of Transportation Number, was owner operated, based in Los Angeles (which is a source city for drugs), had a larger than usual padlock on the trailer, and was carrying two passengers.

After questioning Moran about his passengers, load, destination, and why he was in Chicago, the officer asked Moran if he could search his truck. Moran consented to the search. Immediately upon looking into the trailer, the officer noticed that all the pallets of cargo looked intact and were lying flat on the bed of the trailer, except for a single pallet, which was leaning against the wall of the trailer. Upon closer examination, the officer saw what appeared to be two suitcases under the pallet, which contained bundles of what looked like cocaine. The bundles, which weighed 60.4 kilograms, were later found to contain cocaine. Without the packaging, the total weight of the cocaine was 48.26 kilograms. Moran was then arrested and subsequently indicted on one count of possession with intent to distribute 60 kilograms of cocaine, in violation of 18 U.S.C. § 841(a)(1).

After a trial, in which Moran took the stand, the jury found him guilty on the one count charged in the indictment – possession with intent to distribute cocaine. The jury was also given a special interrogatory in which it found that "the amount of cocaine that [Moran] possessed with intent to distribute has been proven beyond a reasonable doubt to have been . . . at least five kilograms of cocaine." (Docket Entry No. 69.) This finding was consistent with the Final Jury Instructions As Given (Docket Entry No. 68), which stated that "Moran is charged with the crime of knowingly possessing in excess of 5 kilograms of . . . cocaine with intent to distribute it."

After his conviction, Moran filed a motion for acquittal or a new trial based on: (1) sufficiency of evidence; (2) erroneous evidentiary rulings; (3) improper jury instructions; and

2

(4) objections during closing arguments. In rejecting these contentions and denying his motion, this Court found that:

> After viewing the trial and carefully observing the testimony and the demeanor of the witnesses, this Court finds that the Government presented sufficient circumstantial evidence for the jury to reasonably find beyond a reasonable doubt that Moran knew that there was cocaine in his truck.

(Memorandum and Order, November 2, 2004, at 4-5.)

**Sentencing Calculations in the PSR**

Probation calculated Moran's total offense level, using the November 2003 edition of the United States Sentencing Guidelines ("the Guidelines"), as follows:

| | |
|---|---|
| Base Offense Level (§ 2D1.1(c)) (based on 48.26 kilograms of cocaine) | 34 |
| Use of a Special Skill (§3B1.3) (based on determination that Moran's special skill as a commercial truck driver facilitated the commission of the offense) | 2 |
| Obstruction of Justice (§3C1.1) (based on finding that Moran lied to police before his arrest) | 2 |
| Adjustment for Role in Offense (§ 3B1.2(b)) (minor participant) | 0 |
| Total Offense Level | 38 |

Based on an offense level of 38 and a criminal history category of I, the Guidelines recommend a sentence of 235 to 293 months. Probation recommends that this Court sentence Moran to the low end of the Guideline range – 235 months.

Moran has now filed a "Position Paper On Sentencing As To Sentencing Factors," in

3

which he objects to Probation's recommendation for an upward departure for: (1) use of a special skill; and (2) obstruction of justice. He also contends that he should receive a downward departure for his minor role in the offense. The Court will review these three contentions and the effect of United States v. Booker, 125 S.Ct. 738 (2005), on Moran's sentence.

## ANALYSIS

### I. Booker

Before addressing Moran's objections and sentencing Moran under the criteria set forth in Booker, this Court will first briefly review the Booker decision and its impact on the calculation of Moran's base offense under the Guidelines.

In Booker, 125 S. Ct. at 745-54, the Supreme Court held that its prior decision in Blakely v. Washington, 124 S. Ct. 2531, 2537 (2004), which held that the state of Washington's "sentencing scheme" violated the Sixth Amendment because it allowed judges to sentence a defendant beyond the maximum range set forth in the state statute based upon facts "neither admitted by [the defendant] nor found by the jury," applied to the federal Guidelines. Based on this application, the Booker court held that the Guidelines likewise violated a defendant's right to have a "jury find facts essential to his punishment" because they permit judges to impose a sentence greater than the maximum authorized the Guidelines based "facts beyond those found by the jury" or admitted by the defendant.[2] 124 S. Ct. at 749-51. Consequently, under Booker and Blakely, to impose a sentence exceeding the proscribed Guideline range, the facts must have

---

[2] To cure this constitutional deficiency, the Supreme Court: (1) severed and excised two statutory provisions of the Sentencing Reform Act of 1984 which made the Guidelines mandatory – 18 U.S.C. §§ 3553(b)(1) and 3742(e); and (2) held the Guidelines to be "advisory" instead of mandatory. Booker, 125 S. Ct. at 756.

4

been specifically included in a guilty plea or found beyond a reasonable doubt by the jury, or, where the defendant waives his right to a jury finding, by the court.

After reviewing this case in light of Booker, this Court finds that before discussing Moran's objections, it needs to first determine whether the base offense level of 34 is based on the jury's verdict and its finding that Moran was guilty beyond a reasonable doubt of possession with intent to deliver cocaine. Probation determined a base offense level of 34 under Guideline section 2D1.1(c) based on evidence that 48.26 kilograms of cocaine were recovered from Moran's truck.

While there was uncontradicted evidence presented at trial that 48.26 kilograms of cocaine were recovered from Moran's truck, exactly what amount of drugs the jury found him guilty of possessing is not as clear as it would seem. The jury found Moran guilty of the one count charged in the indictment which alleged that he possessed with intent to distribute 60 kilograms of cocaine. The jury, however, was also given a special interrogatory in which they found that "the amount of cocaine that [Moran] possessed with intent to distribute has been proven beyond a reasonable doubt to have been . . . at least five kilograms of cocaine." (Docket Entry No. 69.) This finding was consistent with the Final Jury Instructions As Given (Docket Entry No. 68), which states that "Moran is charged with the crime of knowingly possessing in excess of 5 kilograms of . . . cocaine with intent to distribute it."

The question thus is exactly what amount of cocaine the jury found Moran guilty of possessing. At least one court has held that the Booker requirement, that a jury decide facts affecting the length of the defendant's sentence, is applicable where there is a factual dispute regarding the total quantity of drugs for purposes of determining the base offense level. See

United States v. Ameline, 2005 WL 350811, at *8 (9th Cir. Feb. 10, 2005). Regardless of the uncertainty of the jury's findings, however, this Court finds that there was sufficient uncontradicted evidence presented at trial for both the jury and this Court to find beyond a reasonable doubt that Moran possessed 48.26 kilograms of cocaine. Therefore, this Court holds that the base offense level of 34 does not run afoul of Booker.

## II. Special Skill

According to Probation, Moran's job as a commercial truck driver was a "special skill" which facilitated the commission of the offense, which makes him eligible for a two level upward departure under Guideline section 3B1.3. Under this section, a defendant is eligible for a two level increase in his total offense level if he "used a special skill [] in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The Seventh Circuit has concluded that "the skills necessary to operate an eighteen wheeler" constitute a special skill under section 3B1.3. United States v. Smith, 332 F.3d 455, 459 (7th Cir. 2003); United States v. Lewis, 41 F.3d 1209, 1214 (7th Cir. 1994). Additionally, several courts, including the Seventh Circuit, have held that the use of an eighteen wheeler by a licensed operator in transporting drugs facilitated the commission of the offense of possessing drugs with the intent to deliver. United States v. Tolar, 268 F.3d 530, 532-33 (7th Cir. 2001) (finding that defendant's ability to drive "an 18-wheel rig was a special skill which facilitated the commission or concealment of the offense" in that "[h]e was harder to catch than the normal drug courier and able to move more [drugs] per trip"); United States v. Mendoza, 78 F.3d 460, 465 (9th Cir. 1996) (same).

Here, the uncontradicted evidence presented at trial and reflected in the jury's verdict

prove beyond a reasonable doubt that: (1) Moran was a licensed commercial truck driver with years of experience; and (2) this skill facilitated the commission of the crime in that Moran had the ability to transport large amounts of cocaine across the country.[3] Accordingly, this Court overrules Moran's objection on this matter.

## III. Obstruction of Justice

Moran also objects to Probation recommending a two level increase for obstruction of justice under Guideline section 3C1.1 based on Moran lying to the police during their pre-arrest investigation. Moran contends that even if he lied to the police, he was not under oath, and thus, section 3C1.1 does not apply. This contention, which the Government does not contest, appears correct, in that the Seventh Circuit has held that lying to the police during a vehicle stop before arrest does not warrant an enhancement under section 3C1.1. See United States v. Fiala, 929 F.2d 285, 289-90 (7th Cir. 1991) (holding that "making false statements, not under oath, to law enforcement officers does not warrant application of a §3C1.1 enhancement").

The Government, however, contends that a two level increase under section 3C1.1 is nevertheless appropriate because Moran testified falsely at trial. As stated at the sentencing hearing on February 19, 2005, after reviewing Moran's trial testimony, this Court finds that Moran told false and contradictory versions of events at trial.[4] In response, Moran contends that

---

[3] Moran does not contest that the Government proved beyond a reasonable doubt that he was a licensed truck driver and used his truck to transport drugs. Instead, he contends only that the above facts do not warrant an increase under section 3B1.3. Therefore, this Court finds that Booker is not implicated by this objection.

[4] In denying his motion to acquit, this Court found that "Moran was caught in a number of lies and confronted with contradictory statements." (November 2, 2004, Memorandum and Order, at 6.) For example, in an attempt to explain why he drove from Los Angeles to Central Valley and then back again to Los Angeles, Moran testified that he initially drove from

regardless of this Court's finding of obstruction, it cannot increase his sentence because such a finding would be outside the jury's guilty verdict and thus run afoul of Booker and Blakely.

After reviewing the relevant case law, this Court finds that Moran is correct. Because Moran has not waived his right to a jury on sentencing issues, under Blakely and Booker this Court cannot impose a sentence greater than the maximum authorized by the facts found by the jury. Indeed, in Booker the Supreme Court held that the defendant's Sixth Amendment rights were violated by the district court increasing his sentence based on a finding that he possessed additional drugs and obstructed justice. Following this precedent, the Seventh Circuit, in United States v. Smith, 393 F.3d 717, 720 (7th Cir. 2004), vacated the district court's enhancement for obstruction of justice based on the court's finding that the defendant testified falsely at trial. In so ruling, the court noted that "[u]nder Blakely and Booker, an increase in the defendant's sentence may not be based solely on the judge's findings of fact." Id. See also United States v. McKee, 389 F.3d 697, 700-01 (7th Cir. 2004) (vacating sentence where the district court increased the defendant's sentence under section 3C1.1 after finding that defendant lied at trial).

Accordingly, although this Court finds that Moran testified falsely at trial, Blakely and Booker prevent an increase in his sentence based on facts outside of the jury's verdict.

---

Los Angeles to Central Valley because the load in Los Angeles was not ready for pick up. The Government, however, offered evidence, including a stipulation from the manager of the Los Angeles warehouse manager and a work order, showing that this was untrue. The Los Angeles load was ready for pick-up before Moran left Los Angeles for Central Valley. Additionally, Moran told contradictory versions of where he intended to take his two passengers. On direct, Moran testified that he was going to take one of the men to Detroit on his way to Maryland. When confronted with his log-book with three separate entries showing his destination as Chicago not Detroit, Moran testified that the entries were a mistake. On redirect, however, Moran told yet another story – that he was in fact going to drop-off one of his passengers in Chicago.

Therefore, this Court sustains Moran's objection on this ground.[5]

IV. **Minor Role Objection**

Moran also objects to Probation not giving him a two level "minor role" reduction under Guideline section 3B1.2(b).[6] Probation contends that Moran is not entitled to a minor role reduction because he was only charged with and convicted of the amount of drugs which he possessed at the time of his arrest, not other amounts which might have been attributed to a larger criminal scheme.

Probation's position is incorrect and at odds with the current Guidelines and Seventh Circuit case law. Prior to November of 2001, the law in this circuit held that "'where [the courier] is sentenced only for the amount of drugs he handled, he is not entitled to a § 3B1.2 reduction.'" United States v. Burnett, 66 F.3d 137, 140 (7th Cir. 1995). In November 2001, however, the Sentencing Commission amended section 3B1.2, and in doing so noted that it was rejecting the Seventh Circuit's interpretation in favor of the approach of the Eleventh Circuit, in United States v. Rodriguez De Varon, 175 F.3d 930 (11th Cir. 1999), which held that a courier was not automatically precluded from consideration for a mitigating role adjustment where he was only charged with and convicted of the amount of drugs he personally handled. U.S.S.G. § 3B1.2, com. 3(A) and App. C, amend. 635. In United States v. Rodriguez-Cardenas, 362 F.3d 958, 960 (7th Cir. 2004), the Seventh Circuit acknowledged that the Sentencing Commission

---

[5] The Court notes that in the future, the Government might be able to avoid this problem by submitting a special interrogatory - as to whether the defendant perjured him or herself – to the jury after a guilty verdict.

[6] Under this section, a court may depart two levels if it determines that "the defendant was a minor participant in [the] criminal activity." Guideline section 3B1.2(b).

9

rejected its prior view of 3B1.3, and that under the amended Guidelines, couriers who were only charged with the amount of drugs they were carrying are not automatically precluded from receiving for a minor role reduction. The court, however, noted that even under the amendment, a courier was not automatically entitled to receive a reduction, only that he "could" receive a deduction if he otherwise meets the requirements of section 3B1.2. Id.

Consequently, based on the amended Guidelines, this Court will examine whether Moran qualifies for the a minor role reduction.[7] To receive a reduction under this section, the defendant has the burden to show "by a preponderance of the evidence" that "he was substantially less culpable than other participants." McKee, 389 F.3d at 700. See also Application Note 5 (defining a "minor participant" as a participant who is less culpable than "most of the other participants"). Applying this standard, the Seventh Circuit upheld the denial of a minor role reduction even where the sentencing court found that the defendant did nothing more than make two deliveries of drugs and that another person "obtained the drugs, scheduled the deliveries, and instructed [the defendant] where, when, and what to deliver." Rodriguez-Cardenas, 362 F.3d at 960. In reaching this decision, the Seventh Circuit noted that "merely being a courier" is not enough to automatically obtain a minor role reduction because couriers "play an important role" in the distribution of drugs. Id.

Courts that have more closely analyzed when a courier is eligible for a minor role reduction examine "factors such as the nature of the defendant's relationship to other

---

[7] The court's determination "is heavily dependent upon the facts of the particular case." Application Note 3(C). "[I]n weighing the totality of the circumstances, [the court] is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted." Id.

participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature . . . of the criminal enterprise." United States v. Garcia, 920 F.2d 153, 155 (7th Cir. 1990). See also United States v. Headley, 923 F.2d 1079, 1084-85 (3d Cir. 1991) (applying same factors).

Here, Moran contends that he was simply "an uneducated" courier recruited by a sophisticated drug distribution network and that he is substantially less culpable than other participants. The Government concedes that there were other participants in this case, but asserts that there is "no real average participant" with whom to compare Moran for purposes of applying the section 3B1.3.

While this Court agrees that there are no specific facts as to the other participants, the Court finds that there are enough facts for this Court to find, by a preponderance of the evidence, that Moran was less culpable than most of those other participants. At the time of his arrest, Moran had been a commercial long-haul truck driver for 14 years. During that time and before, other than a minor misdemeanor in 1994, Moran had no prior encounters with law enforcement. Additionally, he had lived in a small ranch house with his wife and brother-in-law in "a lower economic area" in Los Angeles, California. At the time of his arrest, Moran was accompanied by two other persons, one of whom was arrested and charged, but not indicted. While it is true that Moran did not provide any details regarding the other participants, it is not unusual for drug couriers not to have any information other than where to pick up and deliver the drugs. This way the higher up participants are insulated from law enforcement. Indeed, this Court suspects that if the Government had managed to unravel the full scope of the operation into which Moran was brought, he would most likely easily qualify for the minor role reduction.

Accordingly, based on the above, albeit limited, information, this Court finds that Moran was substantially less culpable than most of the other participants and therefore is entitled to a two level reduction under section 3B1.2(b).

## V. Sentence Under Booker

Having resolved Moran's objections, the Court now turns to sentencing him under the dictates set forth in Booker. As explained above, after Booker the Guidelines are now advisory, not mandatory. District courts, however, "while not bound to apply the Guidelines, must consult . . . and take them into account when sentencing," subject to review on appeal for "unreasonableness." Booker, 125 S. Ct. at 767. In addition to the Guidelines, Booker held that sentencing courts should consult and consider the sentencing factors enumerated in 18 U.S.C. § 3553(a), which requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Under subsection (a)(2), the sentence imposed should:

> (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) afford adequate deterrence to criminal conduct;
> (C) protect the public from further crimes of the defendants; and
> (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553 (a)(2)(A)-(D). Section 3553(a) also requires that "in determining the particular sentence [the court] shall consider": (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1), (3), (6), and (7).

12

Accordingly, in light of Booker, in determining a "reasonable sentence," this Court finds that the prudent method is to start with the prescribed Guideline range and then "consider that range as well as other relevant factors set forth in the [G]uidelines and those factors set forth in § 3553(a)." See United States v. Hughes, 2005 WL 147059 (4th Cir. Jan. 24, 2005).

Not surprisingly, in the wake of Booker, a difference of opinion has arisen over the precise weight to be afforded the Guidelines. For example, in the District of Utah, Judge Cassell held that the Guidelines should be given "heavy weight" or "considerable weight" and should be followed in all but "the most unusual cases." United States v. Wilson, 2005 WL 78552 (D. Utah Jan. 13, 2005). Similarly, Judge Richard Kopf in the District of Nebraska, held that the Guidelines must be given "substantial weight." United States v. Wanning, 2005 WL 1273158, (D. Neb. Feb. 3, 2005). In contrast, Judge Adelman in the Eastern District of Wisconsin held that the Guidelines are "just one of a number of sentencing factors" to be considered. United States v. Ranum, 2005 WL 161223 (E.D. Wis. Jan. 19, 2005).[8]

Obviously, until the Seventh Circuit rules on the precise issue, courts in this and other districts will come to diverging views on Booker. In the meantime, this Court finds Judge Adelman's reasoning in Ranum very persuasive and thus will not give the Guidelines criteria any more weight than the section 3553(a) factors. See United States v. Myers, 2005 WL 165314, at * 1-2 (S.D. Iowa Jan. 26, 2005) (adopting Judge Adelman's procedure for applying Booker). In Ranum, 2005 WL 16223, at * 1-2, the court rejected the view that "the Guidelines should be given heavy weight or considerable weight and should be followed in all but the most unusual

---

[8] The above district court opinions interpreting Booker are not meant to be exhaustive but simply a sample of the differing interpretations of the current status of the Guidelines in light of Booker.

13

cases." Judge Adelman noted that if given such weight, the Guidelines would in essence overshadow the section 3553(a) factors because many of the subsection (a) factors are "either reject[ed] or ignore[d]" by the Guidelines. Id. at *1. For example, while subsection (a) permits courts to consider the defendant's "history and characteristics," the Guidelines generally prohibit courts from considering the defendant's education, mental health, employment, family ties, and socio-economic status. Id. Judge Adelman therefore held that under Booker courts may impose a sentence below the Guidelines "so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors." Id. at *2.

Applying this method to the facts of the case, Judge Adelman categorized the section 3553(a) factors into three general groupings: (1) the nature of the offense; (2) the history and character of the defendant; and (3) the needs of the public and the victims of the offense. Id. at *5. In examining the history and character of the defendant, the court found that the following supported a sentence below that set by the Guidelines: (1) defendant's age (50 years old); (2) no prior criminal record; (3) "solid employment history"; (4) "devoted family man"; (5) sick mother; and (6) letters "attesting to defendant's good character." Id. *6. Based on these and other factors, the court held that the "reasonable sentence" was one below that recommended by the Guidelines. Id.

Following Judge Adelman's interpretation of Booker, the court in United States v. Nellum, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005), departed 60 months from the low end of the Guideline recommendation in sentencing a defendant for distribution of cocaine. In reaching this conclusion, the court found important that the defendant would be 65 years old when released from prison and that the rate of recidivism for defendants over the age of 50 was very low. Id. The court also took into consideration that the defendant, when not using drugs,

14

was a "good family man" and did not have any troubles with law enforcement. Id. at *3-4. On the other hand, the court found that the serious nature of cocaine mitigated against going below the guidelines. Id. After examining all of the section 3553(a) and Guideline factors, the court held that based on the above facts, the sentence "called for by the guidelines . . . was greater than necessary to satisfy the purpose of sentencing set forth in § 3553(a)," and thus, the "reasonable sentence" was below that recommended by the Guidelines. Id. at *5.

With the above rulings in mind, the Court now turns to Moran's sentence. Based on the above rulings on Moran's objections, this Court finds that Moran's total offense level under the Guidelines is a 34 (a base offense level of 34 plus a two level increase for use of a special skill minus a two level minor role reduction). Because he has a criminal history category of I, the November 2003 Guidelines recommend a sentence between 151 to 181 months. Moran contends that this Court should impose the mandatory minimum sentence of 120 months, while the Government advocates a sentence within the Guideline range.

After carefully reviewing the facts of this case in relation to the section 3553(a) factors, this Court finds that the proposed Guideline sentence is greater than required for this Court to impose a reasonable sentence. At the time of his arrest, other than a minor misdemeanor in 1994, Moran, who is 44 years old, had no prior encounters with law enforcement. Since 1994, Moran had been steadily employed as a commercial long-haul truck driver, including owning his own truck. He lived in a small ranch house with his wife and brother-in-law in "a lower economic area" in Los Angeles, California. His mother is in very poor health and is unable to work. Although he has no children of his own, he has a very close relationship with his nieces and nephews.

A sentence below that recommended by the Guidelines will sufficiently punish Moran

15

and deter persons, who are otherwise law abiding citizens, from becoming drug couriers. It will also sufficiently protect the public in that it is extremely unlikely that Moran will be a repeat offender, given his previous clean criminal history and the fact that he will be at least 52 years old when released from prison. He will, however, be young enough to resume his otherwise productive life as a taxpayer, husband, and uncle.

Accordingly, while this Court fully recognizes the seriousness of possessing 48.26 kilograms of cocaine, it feels that a sentence of 120 months incarceration is reasonable in light of the above facts and the section 3553(a) factors.

## CONCLUSION

For the foregoing reasons, this Court sustains Defendant Moran's objections in part and overrules them in part and imposes a sentence of 120 months incarceration.

ENTER:  *Blanche M. Manning*
BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: 3/1/05